## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| DYLAN BIGBIE, JOHN BLACKBURN, | § | |
| RANDALL BLACKBURN, RONNIE CAFAGNA, | § | |
| TIM CHAMBERS, STEVEN CLAY, GARY ELDRED, | § | |
| BRYAN HUCKABAY, DANIEL KELTON, | § | |
| BLAKE KLINE, KYLE LEDFORD, JOHN LOVE, | § | |
| KEITH MARTIN, JUSTIN MAXWELL, | § | Civil No. 7:19-cv-77 |
| MATTHEW POSEY, BRICE REAVES, BRYAN REED, | § | |
| CHRISTOPHER STERLING, CHRISTOPHER TALLEY, | § | |
| ERIC VILLAREAL, COLBY WALKER, | § | |
| PHILLIP WARREN, and JAY WOMACK, | § | |
|     Plaintiffs | § | |
|     v. | § | |
| EOG RESOURCES, INC., | § | |
|     Defendant | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW Plaintiffs and file this, their Original Complaint against Defendant EOG Resources, Inc. ("Defendant" or "EOG"), and respectfully allege as follows:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action being brought under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the Court has supplemental jurisdiction over the related state causes of action asserted herein pursuant to 28 U.S.C. §

1367(a).  Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant is subject to personal jurisdiction in Texas.

## PARTIES

2. Defendant EOG Resources, Inc. is a publicly-traded corporation organized in the state of Delaware, doing business in the state of Texas, with its headquarters in Houston, Texas. Defendant EOG is an employer within the meaning of FLSA, 29 USC § 203(d), and exercised ownership and operational control over Plaintiffs concerning their employment.  Service of process upon Defendant may be had by serving citation upon Defendant's registered agent in Texas: CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136

3. All Plaintiffs herein—Dylan Bigbie, John Blackburn, Randall Blackburn, Ronnie Cafagna, Tim Chambers, Steven Clay, Gary Eldred, Bryan Huckabay, Daniel Kelton, Blake Kline, Kyle Ledford, John Love, Keith Martin, Justin Maxwell, Matthew Posey, Brice Reaves, Bryan Reed, Christopher Sterling, Christopher Talley, Eric Villareal, Colby Walker, Phillip Warren, Jay Womack— are residents of the state of Texas who worked for EOG in a variety of capacities under the EOG position title of "Lease Operator," until they were wrongfully terminated by EOG on or about July 20, 2018.

4. Plaintiffs are properly joined herein pursuant to Rule 20 of the Federal Rules of Civil Procedure because they are parties seeking relief against Defendant with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law or fact common to all Plaintiffs will arise in this action.

## FACTUAL BACKGROUND

5. EOG is in the business of hydrocarbon exploration, and, among other enterprises, it operates numerous oil and gas wells in north Texas and elsewhere.

6. Plaintiffs were field workers who maintained well sites operated by EOG. Plaintiffs worked for years under the EOG position designation of "Lease Operator," until their employment was wrongfully terminated by EOG on or about July 20, 2018.

7. Throughout their time at EOG, Plaintiffs performed their job duties at a high level, and received consistently positive reviews from their supervisors for their talent, hard work, and ability to meet or exceed the stated benchmarks required by EOG, including working long hours in adverse conditions whenever called upon by EOG. Despite this proven track record of commitment and quality work on behalf of EOG, Plaintiffs were, for a period of at least three years prior to their termination, intentionally denied the appropriate level of compensation required by state and federal statutes, including legally-prescribed overtime pay.

8. Moreover, as described more fully below, Plaintiffs were made to understand by their supervisors at EOG that complaints regarding failure to pay overtime would result in termination, and, in fact, Plaintiffs were ultimately terminated in violation of state and federal law, causing them substantial monetary damages.

9. Approximately three years prior to Plaintiffs' termination by EOG, Defendant instigated a scheme to avoid paying its employees and contract workers at an overtime rate, regardless of hours actually worked in a given work week. Pursuant to EOG's unlawful scheme,

instead of having its field employees (including Plaintiffs) accurately record their time— including any overtime hours worked— EOG supervisors informed field employees that they were to write down no more than 8 hours per day, regardless of the time actually worked. Field employees were further instructed by their EOG foremen that, in the event that they had to work more than 40 hours in a given work week, they were to officially record (and get paid for) only 40 hours, and take the additional (uncompensated) hours as "comp time" at a later date. In other words, EOG routinely required its employees to work overtime, and then forced its employees to swap overtime hours for regular-time hours at a later date (robbing them of their federally-mandated overtime pay). Finally, EOG management personnel made clear to Plaintiffs that participation in EOG's plan to avoid overtime pay was mandatory, and failure on the part of Plaintiffs to comply would result in termination.

10. Given the variable and seasonal nature of much of the field work performed by Plaintiffs, it was understood by EOG that, during busier weeks, field employees would routinely work far in excess of 40 hours, and then during less busy times of the year, the employees would "take back" the extra time by working less than 40 hours in certain weeks. In either case, employees were instructed by EOG supervisors— with the knowledge of higher management in the company— to write 40 hours of time, and under no circumstances claim overtime, regardless of the hours worked. This practice was so important to EOG, apparently, that some EOG supervisors would fill out the employees' time sheets for them, so that they could make sure that no overtime hours were recorded.

11. The overtime-avoidance practice required by EOG was so open and normalized that supervisors routinely informed employees to "take as long as it takes to do your job, and then go home" with respect to their job duties on a given day— so that on some days, such employees might work 4 hours in the field, and on others they could end up working 15 hours or more if the job required it. Plaintiffs and other employees and contractors in their situation were told repeatedly that this was official EOG policy, and part of their employment contract. It was made clear to all employees affected by the policy that complaints or questions from them about EOG's overtime scheme would result in adverse employment consequences.

12. In 2018, EOG installed GPS-enabled monitoring devices in the company vehicles driven by its field employees (including Plaintiffs). Despite EOG management assuring the affected workers directly that such tracking was "for insurance purposes" and would not be used as a tool for monitoring employee time, such assurances were false. Within just a few months of the tracking systems having been installed, Plaintiffs were called into the EOG office on or about July 20, 2018, confronted with GPS tracking data for their vehicles, and accused of a disparity between their claimed hours worked and the travel information recorded by the GPS systems in their vehicles. At these meetings, EOG management accused the employees of falsifying their time sheets, and offered the employees the choice of resigning on the spot or being summarily fired.

13. Despite the fact that Plaintiffs were complying with EOG's repeatedly-stated policies concerning overtime, and despite the fact that Plaintiffs had extensive job duties that had nothing to do with actively driving around in their company vehicle (and therefore GPS-recorded

driving data would not typically align with actual hours worked in any event), EOG used the supposed disparity between time sheets and GPS tracking data as a pretext to wrongfully terminate Plaintiffs, despite the fact that Plaintiffs pointed out to EOG management personnel that they were entitled to overtime compensation and had been specifically instructed by EOG supervisors to claim such compensation via a system of "time-swapping."  As a result of EOG's unlawful actions, Plaintiffs were put in an impossible situation whereby, if they complained about the lack of lawful overtime tracking and pay, they faced termination, but, in complying with EOG's "time-swapping" scheme to avoid making a claim or complaint regarding overtime, they were ultimately terminated anyway based entirely upon pretextual grounds.

## CAUSES OF ACTION

### A.   VIOLATIONS OF FLSA and WRONGFUL TERMINATION

14.   EOG's actions as described above amount to violations of the FLSA.  EOG's unlawful actions included failure to pay its field workers— for a period of at least three years— the federally-mandated overtime rate for hours in excess of 40 in a given work week, as well as wrongful termination for firing said field workers merely for complying with EOG's (unlawful) policies (under threat of termination if they complained), which required the employees to trade (regular pay) hours for the overtime hours required by their jobs or else be fired.

15.   Plaintiffs are not exempt from the FLSA because they were paid on an hourly basis and should have been compensated for appropriate overtime.  Plaintiffs were not paid on a

salary basis because lease operators for EOG were to be paid an hourly rate based upon the amount of hours worked.

16. During the relevant time period, Plaintiffs regularly worked in excess of forty hours in a given work week.

17. EOG failed to track Plaintiffs' overtime hours and failed to pay one-and-one-half times Plaintiffs' regular rate of pay for said overtime hours, as required by law. To the contrary, EOG knowingly and intentionally instituted a system that misstated and hid the amount of overtime hours actually worked by Plaintiffs.

18. These practices on the part of EOG violate provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. As a result of these unlawful practices, Plaintiffs suffered a loss of wages.

19. Defendant showed reckless disregard for the fact that its failure to pay Plaintiffs appropriate overtime compensation was in violation of the law.

20. Furthermore, Defendant's actions described above amount to wrongful termination in violation of state law and the FLSA. EOG compelled Plaintiffs to forego overtime reporting and pay as a condition of their ongoing employment (making termination an implicit and explicit threat in the event of employee complaint). Ultimately, when EOG confronted Plaintiffs with the pretextual issue of the GPS-enabled time tracking, and Plaintiffs responded by asserting their right to compensation for overtime hours worked, EOG wrongfully and

summarily terminated Plaintiffs. Such wrongful actions on the part of EOG caused substantial monetary damages to Plaintiff, including lost wages.

### B.   BREACH OF CONTRACT

21.   In addition and in the alternative to the foregoing, the unlawful actions of EOG as described herein constitute breach of contract, for which Plaintiffs hereby sue. EOG imposed requirements upon Plaintiffs regarding the handling of overtime hours (i.e., swapping time from week to week as opposed to properly tracking and paying at an overtime rate), and made compliance with said scheme an element of EOG's employment contract with Plaintiffs. In consideration for Plaintiffs' not reporting and being paid for overtime hours worked, EOG agreed to allow Plaintiffs to account for overtime hours worked in one work week by taking a corresponding number of hours off in other weeks. Plaintiffs worked substantial overtime hours pursuant to this agreement, but EOG failed and refused to compensate Plaintiffs for said time, either in money or paid time off as agreed. As a result of EOG's breach, Plaintiffs suffered actual monetary damages, for which they hereby sue.

### C.   COMMON LAW FRAUD

22.   In addition and in the alternative to the foregoing, the unlawful actions of EOG as described herein constitute common law fraud, for which Plaintiffs hereby sue. EOG imposed requirements upon Plaintiffs regarding the handling of overtime hours (i.e., swapping time from week to week as opposed to properly tracking and paying at an overtime rate), and made representations to Plaintiffs that compliance with EOG's scheme was both required and sufficient

to remain employed at EOG. Specifically, EOG represented that Plaintiffs could account for overtime hours worked in one work week by taking a corresponding number of hours off in other weeks. Moreover, EOG represented to Plaintiffs that the GPS tracking systems installed in company vehicles were not intended to modify EOG's time-swapping procedure and were not meant to track Plaintiffs for purposes of calculating hours worked. These representations by EOG were false, and Plaintiffs relied on them to their detriment, suffering actual monetary damages as a result.

23. All conditions precedent to the filing of this suit have been satisfied.

## JURY DEMAND

24. Plaintiffs exercise the right to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

25. Judgment against Defendant for an amount equal to Plaintiffs' unpaid back wages at the applicable overtime rate for each hour worked over 40 hours in a given work week;

26. Judgment against Defendant that its violations of the FLSA were willful;

27. Judgment for an equal amount to the wage damages of Plaintiffs as liquidated damages;

28. Judgment against Defendant for wrongful termination of Plaintiffs and actual damages suffered by Plaintiffs thereby;

29. Judgment against Defendant for breach of contract and actual damages suffered by Plaintiffs thereby;

30. Judgment against Defendant for common law fraud and actual damages suffered by Plaintiffs thereby;

31. Judgment for exemplary/punitive damages for EOG's common law fraud, wrongful termination, and other willful, intentional, and/or malicious acts;

32. Judgment for pre-judgment and post-judgment interest to the fullest extent allowed by law;

33. All costs incurred and reasonable attorney's fees for prosecuting these claims;

34. Total monetary damages in excess of $1,000,000.

35. Leave to add additional Plaintiffs by motion, the filing of written consent forms; or any other method approved by the Court;

36. Leave to amend to add claims under applicable state laws; and

37. Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Jeffrey R. Allen
_____
Jeffrey R. Allen
State Bar No. 24006751
jeff@jrafirm.com
THE JRA FIRM
PO Box 92002
Southlake, Texas 76092
817.756.6122 (phone)
817.756.6464 (fax)
ATTORNEY FOR PLAINTIFFS